JUSTICE LEAPHART
delivered the Opinion of the Court.
Plaintiff Katharine S. Boreen (Boreen) appeals the September 14, 1995 Order of the First Judicial District Court, Lewis and Clark County, granting qualified immunity to Defendant F. Guy Youngblood (Youngblood) and dismissing Boreen’s 42 U.S.C. § 1983 claim as to Defendant Youngblood. We affirm.
We consider the following issue on appeal:
Did the District Court err in granting Defendant Youngblood qualified immunity on the basis that Boreen’s property interest in her employment was not clearly established law at the time she was constructively discharged by the Defendants?

Factual and Procedural Background

Boreen was employed by the Montana Department of Military Affairs. Following her resignation from her employment in April 1990, Boreen filed a complaint against the Department of Military Affairs, alleging constructive discharge under the Montana Wrongful *381 Discharge From Employment Act. That action was dismissed because it was filed after the statute of limitations had passed. Boreen then filed a complaint pursuant to 42 U.S.C. § 1983 (§ 1983) alleging that she was terminated from her employment with the Department of Military Affairs, and that she was deprived of a property interest in her employment without due process of law. Youngblood, one of the named Defendants, filed an answer to the complaint. Boreen then filed an amended complaint, alleging that she was constructively discharged from her employment. Youngblood filed an answer to the amended complaint, raising, inter alia, the affirmative defense of qualified immunity. Youngblood also filed a motion to dismiss or for summary judgment. Youngblood made two primary arguments in his motion to dismiss: (1) government employees who are not covered by a collective bargaining agreement or a contract for a specific duration do not have a property interest in their employment; and (2) he was entitled to qualified immunity. Youngblood also argued that the amended complaint was barred by res judicata and collateral estoppel.
Following a hearing, in a November 16, 1993 Order, the District Court granted Youngblood’s motion to dismiss on the ground that Boreen had no property interest in her employment. The District Court rejected the argument that Boreen’s complaint was barred by res judicata and collateral estoppel. The District Court declined to rule on the question of whether Youngblood was entitled to qualified immunity.
Boreen submitted an interlocutory appeal of the November 16, 1993 Order to this Court, which reversed the District Court’s decision. Boreen v. Christensen (1994), 267 Mont. 405, 884 P.2d 761 (Boreen I). This Court determined that Boreen, whose employment was subject to “just cause” requirements for termination, had a property interest in her employment and could therefore maintain an action under § 1983. The issues of qualified immunity, res judicata, and collateral estoppel were not before this Court in that initial appeal.
The case was remanded to District Court where Youngblood renewed his motion to dismiss or for summary judgment upon the grounds of qualified immunity, res judicata, and collateral estoppel. In a September 14, 1995 Order, the District Court held that it had already rejected Youngblood’s motion for dismissal on the basis of res judicata or collateral estoppel and resolved the case on the issue of qualified immunity. The Court granted Youngblood qualified immunity on the basis that he did not violate any of Boreen’s clearly established rights of which a reasonable person should have known.
*382 Boreen obtained a Rule 54(b), M.R.Civ.R, certification authorizing an interlocutory appeal of the Court’s September 14,1995 Order since the Order effectively dismissed the case as against both defendants.
Standard of Review '
The question of whether a district court properly granted qualified immunity involves a determination of whether the rights in question were clearly established at the time of their alleged violation, and is a question of law, reviewable, de novo. Cannon v. City and County of Denver (10th Cir. 1993), 998 F.2d 867; Williams v. Commonwealth of Kentucky (6th Cir. 1994), 24 F.3d 1526.
In Montana, the standard of review of a district court’s conclusions of law is whether the court’s interpretation of the law is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

ISSUE

Was the District Court correct in holding that Boreen’s property interest in her employment was not clearly established law at the time she was constructively discharged from her employment, thereby rendering Youngblood immune from suit?
The District Court dismissed Boreen’s § 1983 claim against Youngblood on the grounds that Youngblood is entitled to qualified immunity. Because § 1983 is a federal remedy, qualified immunity from a § 1983 suit is a matter of federal law. Finch v. Wemlinger (Minn. 1981), 310 N.W.2d 66, 69-70; Cooperman v. University Surg. Assoc., Inc. (Ohio 1987), 513 N.E.2d 288, 296 (superseded by state statute in 1990).
The purpose of granting qualified immunity to public officers is not to protect them from the consequences of their wrongful acts but to facilitate the proper operation of government by protecting public officers in the discharge of their duties where they act honestly and in good faith. Rickard v. Paradis (1975), 167 Mont. 450, 539 P.2d 718. The good faith requirement has since been modified as set forth below.
The theory of qualified immunity first arose as a defense for police officers in Pierson v. Ray (1967), 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288. The United States Supreme Court in Scheuer v. Rhodes (1974), 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90, expanded the defense to apply to a broader group of executive branch officers. Rhodes arose out of the shootings at Kent State University in 1970. The plaintiffs alleged that Rhodes, then Governor of the State of Ohio, *383 recklessly deployed the National Guard to the Kent State campus. Rhodes, 416 U.S. at 232, 94 S.Ct. at 1684-85. The Supreme Court found that a qualified immunity should be available to officers of the executive branch of government because of the wide range of discretion that officers of the executive branch are called upon to exercise. Rhodes, 416 U.S. at 247, 94 S.Ct. at 1691-92. The Court found that:
It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.
Rhodes, 416 U.S. at 247-48, 94 S.Ct. at 1692. The Court explored the contours of the doctrine of qualified immunity through subsequent decisions that discussed an “objective” versus a “subjective” test of good faith. See Wood v. Strickland (1975), 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214. An official’s subjective good faith belief as to whether he or she violated the plaintiff’s constitutional rights was no longer relevant after Harlow v. Fitzgerald (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396. The standard for granting qualified immunity was reformed in this matter:
We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.
On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to “know” that the law forbade conduct not previously identified as unlawful... the defense would turn primarily on objective factors.
Harlow, 457 U.S. at 818-19, 102 S.Ct. at 2738.
Harlow and its progeny make clear that the qualified immunity inquiry is an objective one. See, e.g., Davis v. Scherer (1984), 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139. The qualified immunity inquiry focuses on whether a defendant, faced with circumstances similar to those of the defendant before the court and in light of the legal authorities extant at the time the defendant acted, reasonably should have known that his or her conduct was unlawful. Qualified *384 immunity “gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.” Hunter v. Bryant (1991), 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589, 596 (quoting Malley v. Briggs (1986), 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271, 280).
Harlow presents a two-pronged test to determine whether an official will be granted qualified immunity. The court must first consider whether a clearly established right has been violated and second, the court must determine whether a reasonable person or official would have known that his conduct violated that right. Sacco v. High Country Indep. Press (1995), 271 Mont. 209, 216, 896 P.2d 411, 415.
The first prong of the Harlow qualified immunity test depends on whether the constitutional right allegedly violated was clearly established at the time of the official conduct giving rise to the litigation. See Finkelstein v. Bergna (9th Cir. 1991), 924 F.2d 1449; Burgess v. Pierce County (9th Cir. 1990), 918 F.2d 104.
The plaintiff has the burden of proving that the right which the defendants allegedly violated was clearly established at the time of the alleged misconduct. Baker v. Racansky (9th Cir. 1989), 887 F.2d 183, 186.
A defendant need not have actual knowledge of a decision which the plaintiff claims clearly established the law. Neither should the defendant be required to have actual knowledge of a decision upon which he relies to show that the law was not clearly established. See, e.g., Mitchell v. Forsyth (1985), 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411; Anderson v. Creighton (1987), 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523.
In the present case, Boreen alleges that she had a clearly established protected property interest in her employment with the Department of Military Affairs when she was constructively discharged from her job by Youngblood in April of 1990.
Youngblood is raising the qualified immunity defense on the basis that Boreen’s protected property interest in her employment was not a clearly established right at the time she was constructively discharged. Although this Court held that Boreen did have a protected property interest in her employment in Boreen I, we must ask whether this property interest was a clearly established right in 1990 when Boreen was constructively discharged.
The United States Supreme Court has not established the requisite hierarchy of law from which to determine whether a right is *385 clearly established. See, e.g., Harlow, 457 U.S. at 818 n.32, 102 S.Ct. at 2738 n.32, (expressly leaving this question open). Whether a United States Supreme Court decision is necessary, whether circuit courts may look to lower federal court decisions, and whether state decisional law plays a role are questions disputed among circuit courts. See Richard B. Saphire, Qualified Immunity in Section 1983 Cases and the Role of State Decisional Law, 35 Ariz. L. Rev. 621, 633 (1993). Circuit courts are in agreement that the determination of whether the right in question is clearly established begins with a relevant United States Supreme Court decision if available. See, e.g., Thomas v. Whalen (6th Cir. 1995), 51 F.3d 1285.
The United States Supreme Court’s seminal case establishing an employee’s property interest in employment is Cleveland Board of Education v. Loudermill (1985), 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494. In Loudermill, the Court held that an Ohio statute which protected a public employee’s employment during “good behavior and efficient service” and prohibited dismissal “except for misfeasance or non-feasance in office” created a property interest in continued employment which could not be taken away without appropriate procedural safeguards. The Court concluded in Loudermill that the “just cause” provision in the Ohio statute created such a property interest.
The Court in Loudermill did not hold that all employees whose employment is subject to “just cause” or “for cause” protection have a property interest in their employment. Rather, the Supreme Court held that the language in the Ohio statute, which provided that an employee could not be fired except for specific listed reasons, gave the plaintiff a property interest in his job under Ohio law. Loudermill, 470 U.S. at 538-39, 105 S.Ct. at 1491-92. The Ohio laws expressly provided that employees were classified civil servants who were entitled to hold positions of employment, and that they were entitled to hold their positions during good behavior and efficient service. The Ohio employees’ pay could not be reduced, nor could they be suspended, or removed from their positions, except for specific statutory violations. Loudermill, 470 U.S. at 538, 105 S.Ct. at 1491.
The Supreme Court decision in Loudermill emphasized that property interests “are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.” Loudermill, 470 U.S. at 538, 105 S.Ct. at 1491 (quoting Board of Regents v. Roth (1972), 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 *386 L.Ed.2d 548). Thus the question of whether a property interest exists must be examined by reference to state law. Bishop v. Wood (1976), 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690. The Loudermill decision, therefore, did not answer the question of whether a public employee in Montana has a property interest in his or her employment.
The “just cause” provision analyzed in Loudermill was contained in an Ohio statute whereas the “just cause” provision Boreen claims protection under is found in a Montana administrative rule. Rule 2.21.6509, ARM. In addition, Montana has an “at will” employment statute, § 39-2-503, MCA, which has been construed as providing no property interest in employment absent a “specified term” of employment. Reiter v. Yellowstone County (1981), 192 Mont. 194, 627 P.2d 845. Loudermill did not address, nor did it resolve, the issue of whether a “just cause” regulation converts an employment “at will” to employment for a specified term. It is necessary then to examine Montana law as expressed by this Court and the federal courts interpreting Montana law to determine if Boreen had a property interest in her employment in 1990.
This Court described the issue of whether a public employee in Montana had a property right in employment as one of “first impression” in Boreen I. Boreen 1, 884 P.2d at 763. The Court confirmed that “a close reading of our prior cases clarifies that we have not heretofore decided the issue presented in the instant case ....” Boreen I, 884 P.2d at 769. While the nonexistence of a decision specifically addressing the alleged right is a “significant consideration” in determining whether the right is clearly established, Fortner v. Thomas (11th Cir. 1993), 983 F.2d 1024,1028, the plaintiff need not produce a case directly on point to show that a right was clearly established. Ostlund v. Bobb (9th Cir. 1987), 825 F.2d 1371, 1374. Nonetheless, the contours of the right allegedly violated must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Anderson, 483 U.S. at 640, 107 S.Ct. at 3039.
Montana has an “at will” employment statute providing that an employment with “no specified term” may be terminated by either party on notice to the other. Section 39-2-503, MCA. Under that law, as construed by this Court prior to April 1990, such “at will” employees not covered by any written contract or collective bargaining agreement had no property interest in their employment. Reiter, 627 P.2d at 849. In Reiter this Court considered the case of a county *387 custodian whose employment was terminated after eighteen years of service. In rejecting Reiter’s argument that he had a property interest in his employment, this Court stated:
It is clear... that property interests are created and defined by state law. The Montana statute [§ 39-2-503, MCA] creates no property interest in employment if there is no specified term.
Reiter, 627R2dat849. Reiter had argued that his longevity of service, by implication, created a property interest. The Court rejected that argument, and the Court’s pronouncements provided a firm basis for the conclusion that state employees with no specified term of employment likewise had no property interest in their employment:
Even though appellant may have had an implied contract with the county by virtue of his longevity of service, it would be a contradiction in terms to say that he had an “implied specified” period of employment. A specified term is one which the parties expressed, and there was no expression here concerning the length of employment. Section 39-2-503, MCA, operates to fill the gap left by the parties by defining the relationship as an “at-will” employment.
Reiter, 627 P.2d at 849. The Court did not answer the question of whether an administrative regulation containing a “just cause” termination provision creates a “specified period” of employment and thus a property interest in that employment.
The underlying administrative regulation which this Court considered in conjunction with Loudermill as giving rise to a property interest in Boreen I, was first discussed in Nye v. Department of Livestock (1982), 196 Mont. 222, 639 P.2d 498. The Court initially determined that Nye had completed her probationary period of state employment and hence ‘had permanent status” in her public employment, and then held that there was no showing of “just cause” for removing her from her position. Nye, 639 P.2d at 502.
In considering the question of whether Nye was entitled to judicial review of the decision following her grievance, the Court explained that the answer depended on whether her grievance was a contested case under the Montana Administrative Procedure Act (MAPA). Nye, 639 P.2d at 500-01.
The Court noted that whether a person was entitled to a contested case hearing depended not only on statutory rights providing for due process but also on whether a hearing is required as a matter of constitutional law. Nye, 639 P.2d at 501. Nye had not cited any statutory or constitutional authority which indicated that a person in Nye’s position was “required by law” to be given an opportunity for *388 hearing prior to a determination of her rights or privileges. Nye, 639 P.2d at 501. The Court indicated that its own research had likewise not revealed any such authority. Therefore, the Court concluded that Nye’s grievance procedure did not qualify as a contested case under MAPA and consequently, Nye was not entitled to judicial review. Nye, 639 P.2d at 501. Although the Court held that Nye had “permanent status” in her employment, it did not find that such “permanent status” was a “specified term” that would defeat the “at will” nature of Nye’s employment, giving her a constitutional right to a hearing.
The Court next considered whether Nye could bring a claim of wrongful discharge. Agreeing with the district court that Nye’s employment was “at will” pursuant to § 39-2-503, MCA, this Court nevertheless found that Nye was not precluded from bringing a wrongful discharge claim:
The District Court’s order of dismissal [of the wrongful discharge claim] appears to rest upon the fact that Nye’s employment was “at will.” Section 39-2-503, MCA. However, the tort of wrongful discharge may apply to an at will employment situation.
Nye, 639 P.2d at 501-502.
The Court recognized that the administrative “just cause” rule, applicable to Nye, “may be the source of a public policy [the violation ofl which would support a claim of wrongful discharge.” Nye, 639 P.2d at 502. Reciting the due process protections contained in the policy, the Court concluded that the Department of Livestock failed to apply these regulations to Nye and, thereby, violated public policy. Nye, 639 R2d at 502. The Court then remanded the case on this issue.
Citing Nye, a later decision of this Court stated that a wrongful discharge claim based on a public policy violation is one of several “exceptions” to the right of “at will” employers to discharge employees. Prout v. Sears, Roebuck & Co. (1989), 236 Mont. 152, 157, 772 P.2d 288, 291. As noted by Justice Morrison in a subsequent concurring opinion, such a court-created exception does not abrogate the statutory employment “at will” rule:
The breach of the obligation owed by the employer may give rise to a tort action on the part of the employee, but does not convert “at will” employment to employment for a specific term.
Dare v. Montana Petroleum Mktg. Co. (1984), 212 Mont. 274,286,687 P.2d 1015, 1022 (Morrison, J., specially concurring).
When Nye is read in conjunction with Reiter and subsequent Montana decisions analyzing the “at will” statute, it is apparent that a Montana employee subject to a “just cause” provision did not have *389 a clearly established property interest in her employment subject to the protections of the Due Process Clause. Reiter held that an implied employment contract did not create a “specified term” of employment nor did “permanent status” in the Nye case create a “specified term” that would render the “at will” statute inapplicable to an employee. Although the Court in Nye held that violation of the administrative “just cause” provision may be the basis for a claim of wrongful discharge it did not hold that “just cause” may be the basis for a protected property interest. Subsequent case law emphasized that a wrongful discharge claim did not convert an “at will” employment to a “specified term.”
Although we said that Reiter and a subsequent Montana federal district court decision suggested our decision in Boreen 1, this “suggestion” cannot fairly be said to have clearly established the law. “Government officials ... are not charged with predicting the future course of constitutional law.” Ostlund, 825 F.2d at 1374.
While the pre-1990 case law did not hold specifically that an administrative “just cause” provision did not create a property interest in employment, neither was it clear that the “just cause” provision affirmatively established a property interest. Certainly, the “contours” of an employee’s right to a property interest in employment were not sufficiently clear such that a reasonable official would understand that he was violating that right. See Anderson, 483 U.S. at 640, 107 S.Ct. at 3039. We therefore hold that at the time Boreen was constructively discharged in 1990, it was not clearly established that she had a protected property interest in her employment.
Although Boreen alleges that it was improper for the District Court to consider post-1990 decisions in its determination of whether her property interest in employment was clearly established in 1990, these decisions are relevant indicators of the state of the law before Boreen I. Generally courts do not look to post-incident decisions in determining whether the prior law had been clearly established, but such cases may serve as persuasive authority. Baker, 887 F.2d at 187.
The District Court noted that in 1991, this Court ruled that a governmental (school district) employee did not have a property interest in his employment. Medicine Horse v. Big Horn Cty. Sch. Dist. (1991), 251 Mont. 65, 823 R2d 230. In 1994, the Ninth Circuit Court of Appeals, in Hollister v. Forsythe (9th Cir. 1994), 22 F.3d 950, construed Montana law and specifically the Reiter and Medicine Horse decisions, and ruled that a county employee subject to “just cause” requirements for termination did not have a property interest *390 in employment. This Court acknowledged the Hollister decision in Boreen I, stating “we simply do not agree” with the decision. Boreen I, 884 R2d at 769. Our disagreement with the result in Hollister illustrates the lack of clarity on the issue of whether a Montana employee subject to a “just cause” provision had a protected property interest in her job before Boreen I.
A determination of whether the law was clearly established requires an analysis of the state of the law as of the date of the incident in question as opposed to a review of legal developments after the incident. Nonetheless, the District Court did not err in noting that numerous judicial decisions after 1990 illustrate the fact that the question of whether an “at will” employee had a property right in employment was not “clearly established” before our 1994 decision in Boreen I. Moreover, the Court’s conclusion is not inconsistent with our analysis of the pre-1990 authority.
Boreen also argues that Rule 2.21.6509, ARM, the administrative rule which requires just cause and due process for disciplinary action, clearly established the right upon which Boreen bases her § 1983 claim. In other words, Boreen contends that the administrative rule is the source of her procedural due process right, and that the rule created clearly established constitutional rights as of 1990, thereby defeating Youngblood’s qualified immunity claim. Boreen’s argument is incorrect.
A similar argument was made by a discharged employee in Price v. Brittain (5th Cir. 1989), 874 F.2d 252. Price alleged that he was deprived of his property interest in employment without procedural due process. He claimed that his employee handbook, which required notice and an opportunity to respond prior to any discharge, “made the contours of his procedural due process rights clear to defendants.” Price, 874 F.2d at 261. Citing the Supreme Court’s decision in Davis, the appeals court rejected the argument:
[E]mployee handbooks cannot alone clarify established constitutional rights that are not themselves clear in light of preexisting law.
Price, 874 F.2d at 262. The court found that the defendant was entitled to qualified immunity.
The Fifth Circuit Court of Appeals’ holding as to the employee handbook underscores the problem with Boreen’s argument on the issue of whether the “just cause” provision by itself clearly established a property right in employment as of 1990.
*391 As of 1986, this Court had held in Bick v. State, Dept, of Justice (1986), 224 Mont. 455, 457, 730 P.2d 418,420, that “it is axiomatic in Montana law that a statute cannot be changed by administrative regulation.” (Citation omitted.) Accordingly, the “just cause” provision in Rule 2.21.6509, ARM, did not by itself, as of 1990, clearly establish a property right in the face of the “at will” employment statute, § 39-2-503, MCA.
Our decision in Boreen I was based not on the administrative “just cause” provision alone, but on the administrative “just cause” provision read in conjunction with the United States Supreme Court decision in Loudermill and our decision in Nye.
As of April of 1990, § 39-2-503, MCA, provided that an employment “having no specified term” may be terminated at the will of either party. At that time, this Court had not held that an administrative rule containing a “just cause” termination provision constituted a “specified term” of employment which would render the “at will” statute inapplicable to an employee, thereby creating a property interest in his or her employment.
As the dissent points out, the “at will” employment doctrine embodied in § 39-2-503, MCA, is “antithetical” to the “just cause” requirement of Rule 2.21.6509, ARM. However, contrary to the dissent’s conclusion, the fact that the administrative rule is incompatible with the statute, only goes to prove that the law was confusing (i.e., not clearly established) until our decision in Boreen I.
Because we hold that Boreen’s property interest in her employment was not clearly established in April of 1990, we need not reach the second prong of the Harlow test for granting qualified immunity. The second prong asks whether a reasonable official under the defendant’s circumstances would have known that his conduct violated the law. Because the law was not clearly established a reasonable official could not have known of it and the second prong need not be addressed. See Lucero v. Hart (9th Cir. 1990), 915 F.2d 1367,1371 (citing Harlow for the proposition that the unsettled nature of the law, on the issue of entitlement to a job, necessarily means that the government officials could not have violated a clearly established statutory or constitutional right of which a reasonable person would have known).
We hold, therefore, that Boreen’s property interest in her employment was not clearly established when she was constructively discharged in 1990 and, consequently, Youngblood is immune from suit. The District Court’s grant of Youngblood’s motion to dismiss on the *392 basis of qualified immunity was therefore correct. Because we affirm the District Court’s dismissal on the basis of qualified immunity we do not reach the issues of res judicata and collateral estoppel. Affirmed.
CHIEF JUSTICE TURNAGE, JUSTICE GRAY and DISTRICT COURT JUDGE PHILLIPS, sitting for JUSTICE ERDMANN concur.